OPINION OF THE COURT
Kaye, J.
This case, involving narcotics sales, presents two questions: first, was it error for the trial court to instruct the jury on the affirmative defense of entrapment over defendant’s consistent protestations that he was not advancing an entrapment defense, but was in fact putting forth a different defense, and second — if error — was the error harmless?
Defendant’s position both at trial and on appeal has been that he did not raise an entrapment defense and that it was *772 error to charge the jury on that defense. Defendant claims that the entrapment instruction violated his fundamental right to present a defense of his own choosing and cannot be deemed harmless in any circumstances. Alternatively, he contends that because the entrapment charge shifted the burden of proof of criminal intent to him, permitted the jury to consider his predisposition to commit the crimes charged, and undermined the defense he actually raised, the error was prejudicial in this case.
The Appellate Division concluded that the defense was not entrapment and that the trial court’s instruction therefore constituted error. We agree. The Appellate Division, however, found the charge error harmless, and in that conclusion we cannot concur. While we need not reach defendant’s broader argument that it is invariably reversible error to charge a jury on an affirmative defense disavowed by defendant, on this record the error cannot be deemed harmless.
Synopsis of the Trial Record
Resolution of both questions presented requires a summary of relevant portions of the trial record.
In a brief opening, defense counsel stated that, although defendant did not have the burden of proof, the evidence would show that an undercover agent — John DiDomenico— kept after his client to sell him drugs. "He was trying to ensnare an innocent man” into selling something he didn’t want to sell. Defendant, however, did not sell the agent drugs. Counsel explained that, in order to "get this man off his back,” defendant ultimately sold him what turned out to be talcum powder, after which the agent, a "professional deceiver,” invented a case of drug sales against his client.
The People’s key witness was the undercover narcotics agent, John DiDomenico, who testified that he had been introduced to defendant under the assumed name Frank DeMarco after telling a police informant he wanted to buy cocaine. DiDomenico met with defendant a number of times in the following days for the purpose of making a purchase, but on each occasion defendant said he had been unable to obtain any cocaine. Eventually, DiDomenico told defendant that he was tired of these abortive meetings, at which point defendant gave him his home telephone number. DiDomenico subsequently arranged to meet defendant outside a bar, where they agreed that DiDomenico would purchase a gram of cocaine. *773 When he arrived, defendant insisted that he first needed the money to buy the cocaine, and DiDomenico gave defendant $125 — which the officer conceded may well have been paid out of his own funds. Defendant returned several minutes later with an envelope that he claimed contained cocaine. Laboratory analysis later showed that what defendant had sold DiDomenico for his $125 was talcum powder, not cocaine.
According to DiDomenico, after he insisted that defendant make restitution, defendant and his friend, codefendant Robert Sanzo, gave him a tinfoil packet of opium and then offered to sell him opium and amphetamines that Sanzo had acquired from the drugstore where he worked. Having obtained a sample of the pills from Sanzo,[1] DiDomenico agreed to purchase the drugs. He testified that defendant was present during the transaction, but it was Sanzo who actually possessed and delivered the drugs. Subsequent laboratory analysis showed the substances were indeed opium and amphetamines.
The only defense witness was defendant’s mother, who testified that during the month when DiDomenico claimed he bought drugs from defendant, she had received 15 to 20 telephone calls from a man named Frank, who asked to speak to defendant but would not leave a telephone number. She heard her son speak to Frank only once, during which defendant yelled at Frank. Frank came to her house toward the end of the month, when defendant and his good friend Sanzo were working in the yard. Frank called Sanzo over and spoke to him alone. Sanzo later told her that if Frank telephoned again, he — Sanzo—wanted to speak to him.
At a precharge conference, the prosecutor requested an entrapment instruction, arguing that defendant had based his defense on the claim that he "could not form the necessary intent to, I believe this to be the defense, although I’m not sure, at the conclusion of the case, that he could not form an intent to sell these drugs, simply because of the fact that he was trapped.” Over defense objection, the court declared that it would charge the jury on the entrapment defense.
In summation, defense counsel repeated the claim he had made in his opening — that DiDomenico was trying to "ensnare” his client by his constant efforts to get him to sell drugs, *774 leading to defendant’s sale of talcum powder simply to get a "pest off his back.” That transaction, counsel argued, was the key to the entire case. Counsel asserted that it was Sanzo alone who later sold drugs to DiDomenico, and that DiDomenico had fabricated the story of defendant’s involvement simply because he was infuriated and humiliated at having been tricked into buying talcum powder, possibly even with his own money.
The court thereafter instructed the jury on the affirmative defense of entrapment, noting that the burden of proving all material elements of the charged crimes beyond a reasonable doubt was on the People, but that defendant then bore the burden of proving the affirmative defense of entrapment by a preponderance of the evidence. After reading the elements of the defense from Penal Law § 40.05, the trial court again noted that defendant "has the burden of proving by a preponderance of the evidence that he was actively induced or encouraged to commit a crime he would not otherwise be disposed to commit and was thus ‘entrapped’ under the law.” Defendant at this point reiterated that this was not the theory of his defense. During deliberations, and shortly before the return of a guilty verdict, the jury asked for the definition of entrapment. The court reread only the statutory definition of entrapment and its instruction on defendant’s burden of proof.
Defendant was convicted of several counts of criminal sale of a controlled substance, and the Appellate Division affirmed. While concluding that it was error to charge entrapment, the Appellate Division termed the error harmless beyond a reasonable doubt "given the overwhelming evidence regarding defendant’s intent to commit the crimes for which he was convicted” (140 AD2d, at 538). We now reverse.
Discussion
The entrapment defense was introduced in New York — one of the last States to recognize it — in 1967, as part of the current Penal Law. Penal Law § 40.05 sets forth the elements of the defense: "that the defendant engaged in the proscribed conduct because he was induced or encouraged to do so by a public servant, or by a person acting in cooperation with a public servant, seeking to obtain evidence against him for purpose of criminal prosecution, and when the methods used to obtain such evidence were such as to create a substantial risk that the offense would be committed by a person not *775 otherwise disposed to commit it.” As it is designated an affirmative defense, the burden to establish these elements by a preponderance of the evidence is placed on the defendant— unlike other defenses, as to which the defendant has no burden and which the People must disprove beyond a reasonable doubt (Penal Law § 25.00 [1], [2]).
A defendant thus assumes a substantial burden in asserting entrapment. Indeed, New York imposes a heavier burden than either the Federal courts, where entrapment is an ordinary defense — not an affirmative defense — or the Model Penal Code and those States following its formulation, where entrapment is a so-called "objective” affirmative defense. In contrast to Penal Law § 40.05, which requires that defendant prove that he or she had no disposition to commit the acts charged (see, People v Calvano, 30 NY2d 199, 203-204), under the Model Penal Code approach the character of the particular defendant is not a relevant subject of inquiry, the pertinent question being the nature of the police conduct and whether it was such as to cause an ordinary person to commit the crime (ALI Model Penal Code § 2.10, comment, at 20 [Tent Draft No. 9]).
It should be borne in mind, however, that affirmative defenses were introduced into the law not "as a hardening of attitudes in law enforcement [but] rather as a civilized and sophisticated amelioration.” (People v Patterson, 39 NY2d 288, 306 [Breitel, Ch. J., concurring].) As such, it is necessary to guard against abuse of affirmative defenses "to unhinge the procedural presumption of innocence” or "to undermine the privilege against self incrimination by in effect forcing a defendant in a criminal action to testify in his own behalf.” (Id., at 305.)
Applying these legal standards to the factual record in this case, we agree with the conclusion reached by the Appellate Division: "a fair reading of the record establishes that the entrapment defense was not raised” (140 AD2d, at 538, supra). Defendant’s trial theory had in common with a defense of entrapment the premise of overreaching and misconduct by a police officer. But defendant did not contend that he was "induced or encouraged” to engage "in the proscribed conduct.” (Penal Law § 40.05.) His defense was to deny engaging in the "proscribed conduct” at all; he sold the officer only talcum powder. Defendant sought to have the jury disbelieve DiDomenico as to any sales of controlled substances by him, and to believe instead that the officer sought retaliation by falsely involving him in criminal charges.
*776 Nor did counsel’s use of the word "ensnare” in his opening and summation, convert his defense to one of entrapment. Counsel used the word "ensnare” to describe DiDomenico’s repeated efforts to cause defendant to sell him drugs. DiDomenico’s alleged overzealousness was relevant to defendant’s theory that the officer was angered by what actually happened and ultimately framed him. Counsel was not forbidden to urge the jury to draw these inferences at peril of being saddled with the burden of proving a full-blown entrapment defense.[2]
Having concluded from a fair reading of the record that defendant did not raise the entrapment defense, we further agree with the Appellate Division that it was error to accede to the People’s request for such an instruction.
Imposing the burden of proving entrapment on defendant, who had not raised it, constituted an abuse of the affirmative defense in derogation of defendant’s right to have the State bear the entire burden of proof. Moreover, a trial court is not authorized to instruct the jury on legal principles that are not applicable to the particular case (CPL 300.10 [2]). As we have recognized, jury instructions have singular significance in criminal trials, where a charge error may well result in the deprivation of a fair trial and require reversal (see, e.g., People v Owens, 69 NY2d 585, 589). Whether or not reversible error in every case, the erroneous instruction prejudiced defendant in at least two respects.
First, a defendant unquestionably has the right to chart his own defense (see, People v Martin, 66 AD2d 995, 996), and in this case the entrapment charge undermined the defense chosen by defendant. In telling the jury that when counsel *777 used the word "ensnare” he was really raising the defense of entrapment, the court’s instruction effectively impaired the success of the different inferences urged by defendant. Furthermore, by informing the jury that defendant was claiming he had sold the drugs as a result of the officer’s inducement, the trial court placed defendant in the midst of contradictory defenses on the critical question of whether he had or had not sold any drugs. Defendant was arguing that he had not sold any drugs to DiDomenico; the entrapment defense proceeded on the premise that he had sold drugs to DiDomenico. While a defendant is not forbidden to do this (see, People v Butts, 72 NY2d 746 [decided today]), it is plainly a hazardous tactic, for it not only risks confusing the jury as to the nature of the defense but also may well taint a defendant’s credibility in the eyes of the jury. Indeed, only recently a Supreme Court ■Justice aptly termed such a strategy "self-penalizing.” (See, Mathews v United States, 485 US —, 108 S Ct 883, 889 [Scalia, J., concurring].) Certainly it is not a strategy that should be thrust on a defendant who has not chosen it.
Second, the court imposed on defendant an affirmative burden of proof he had not undertaken by his defense theory. The jury was charged that defendant had the burden of establishing by a preponderance of the evidence that DiDomenico actively enticed him into committing the crime, and that without such enticement defendant would not have been disposed to commit the crime. Understandably, in light of his quite different defense, defendant did not attempt to present evidence, through his own witnesses or through cross-examination, to demonstrate that DiDomenico actively encouraged or induced him to sell drugs after the talcum powder incident, as would have been required to prevail upon a claim of entrapment. Nor did defendant make any affirmative effort to meet his burden of showing a lack of disposition to commit the charged crimes, as it was his claim that they had never happened at all. Thus, the court’s charge imposed upon defendant an affirmative burden that the jury was bound to conclude he had failed to sustain (see, People v Alwadish, 67 NY2d 973, 974).
While it is true, as the People point out, that the trial court initially, and properly, charged the jury that they were not to reach the affirmative defense of entrapment unless and until they determined that the People had met their higher burden of proving the elements of the charged crimes, we do not therefore conclude that defendant could not have been preju *778 diced by the imposition of a burden he was unprepared to meet. In that defendant advanced only a defense — as to which he had no affirmative burden of proof (see, People v Albright, 65 NY2d 666) — the suggestion that he had assumed a burden of proof in connection with his defense itself had the potential to mislead the jury (People v Victor, 62 NY2d 374, 378 [reversal required where alibi charge may have misled jury as to defendant’s burden]). We note, moreover, that the jury requested that the instruction on entrapment be reread during deliberations, demonstrating that they did in fact consider the issue injected by the trial court’s erroneous acquiescence in the District Attorney’s request to charge.
Finally, we reject the Appellate Division’s conclusion that the evidence of defendant’s intent was overwhelming and consequently, prejudice notwithstanding, the erroneous instruction was harmless. If DiDomenico’s testimony were fully credited, then the evidence of defendant’s intent to sell drugs was indeed overwhelming. But the defense urged was not that defendant had no intent to sell DiDomenico narcotics; the defense urged was that he simply had not done so, and that the officer’s testimony was a fabrication. Overwhelming evidence of intent would be relevant to the question whether the defense of entrapment had been made out, but was not proof whether the sales took place at all. In addition, DiDomenico’s testimony was the sole source of evidence both of defendant’s intent and of the sales. It was this very testimony that defendant sought to have the jury discredit. The erroneous instruction deprived defendant of the opportunity to have the jury evaluate the officer’s testimony in assessing defendant’s claim accurately. It is no answer to say that the evidence of intent proffered by the officer nonetheless rendered that error harmless.
While we have concluded that defendant’s remaining contentions lack merit, the erroneous entrapment charge unduly prejudiced defendant and requires a new trial.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

. The facts of this transaction formed the basis for a separate indictment of Sanzo. The jury was given a limiting instruction that this evidence was not to be considered against defendant, who had not been involved.

. Addressing the dissent, defendant never adduced any evidence to show, nor did he argue, that following the talcum powder incident he had sold the opium and amphetamines to DiDomenico only because of the officer’s active encouragement. Notably, defendant also did not argue that the jury could infer, if they disbelieved his denial of the offenses, that he had sold the drugs as a result of the officer’s encouragement before the talcum powder transaction. The import of the dissent is that a defendant who found himself in the situation depicted by defense counsel — pursued by a police officer seeking to make a drug purchase and then framed when he failed to provide drugs — must face a Hobson’s choice at trial: defendant would be forced either to avoid eliciting or commenting on the very evidence that provided an explanation of the officer’s motive to fabricate the charges, or mount a full-scale entrapment defense. The dissent’s characterization of the defense proffered in the case as merely an artful attempt by counsel to smuggle in the concept of entrapment assumes the falsity of defendant’s version of events, which it is not our province to do.