■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ENDICE MALDONADO, Appellant.—Judgment, Supreme Court, Bronx County (Gerald Sheindlin, J.), rendered October 31, 1989, convicting defendant, after a jury trial, of robbery in the second degree (Penal Law § 160.10 [2] [b]), and sentencing him, as a second felony offender, to an indeterminate term of imprisonment of from 7-½ to 15 years, unanimously reversed, on the law, and the indictment dismissed, with leave to the People to re-present the charges of robbery in the second degree (Penal Law § 160.10 [2] [b]) to the grand jury. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30 day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

By indictment filed May 12, 1988, defendant was charged with robbery in the first degree, robbery in the second degree (two counts), and criminal possession of stolen property in the fourth degree. The charges stemmed from a January 2, 1988 gunpoint robbery of complainant, Mota Psukerman. Defendant was arrested on April 30 when the complainant saw him sitting in a pizzeria and notified the police.

The robbery occurred on the afternoon of January 2, 1988, when complainant, a 56-year-old man who walked with a cane, was accosted by two men in the lobby door of his apartment building. He testified that defendant "jumped from behind" the lobby door while pointing a "toy * * * or real [pistol]" at him and threw him against the wall. Complainant further testified that defendant hit him on the head, knocking him to the floor, and then dragged him behind the lobby door where, after kicking him in the back, he began choking him. The second alleged robber fled shortly after the incident began.

At trial, defendant interposed the defense of misidentification. In addition to a stipulation establishing that complainant waited more than a month before reporting that he had seen the robber earlier on the date of the robbery, defendant introduced into evidence police reports containing complainant's description of clothing and hair length of the robber, and presented the testimony of Olga Oliveras, a licensed haircutter, who stated that the type of haircut she had been giving defendant since 1984 or 1985, did not match the recorded description of "very closely cropped haircut".

On appeal, defendant argues that it was error for the trial court to have charged, over defense objection, the affirmative defense to robbery in the first degree under Penal Law § 160.15 (4), which states, in pertinent part, that "it is an affirmative defense that [the] pistol * * * was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged." He urges that although the submission of such a charge is intended to benefit a defendant by reducing, in appropriate circumstances, a first degree robbery charge to robbery in the second degree (Penal Law § 160.10 [2] [b]), its effect in this case was to undermine his defense of misidentification. We agree.

A defendant charged with first degree robbery is entitled to the affirmative defense that the gun used was "unloaded or inoperable" when the preponderance of the evidence supports such a claim. (People v Gilliard, 72 NY2d 877, 878; Penal Law

§ 160.15 [4]].) However, where, as here, the Judge instructs the jury on this affirmative defense over defense counsel's objection—and in the face of defendant's assertion that he did not commit the crime—the effect of the charge is to weaken defendant's trial posture. Simply stated, the defense of inoperability of the weapon is intended to lessen the degree of criminality, but it necessarily presupposes the commission of the crime. When a defendant claims that he has been misidentified, such a charge does not serve its ameliorative purpose, but, rather, deflects from his protestations of innocence.

Moreover, a defendant is entitled to establish his own defense, and it is impermissible for the trial court to foist upon him an affirmative defense which, while arguably supportable by the prosecution's case, is in direct conflict with the course he has charted. (See, People v DeGina, 72 NY2d 768; People v Cofer, 48 AD2d 818.)

Our determination renders moot defendant's argument of excessive sentence. The sole remaining issue on appeal, which asserts that defendant was deprived of due process by the court's sealing of the courtroom during its charge to the jury, is rejected in light of People v Colon (71 NY2d 410), which specifically sanctions this procedure. Concur—Carro, Rosenberger, Asch and Kassal, JJ.

Sullivan, J. P., concurs in a memorandum as follows: Although I agree that reversal is in order, I do so only on the limited ground that the particular wording of the affirmative defense charge was prejudicial and constitutes reversible error. I disagree with the majority's conclusion that charging the affirmative defense, per se, undermined and conflicted with defendant's defense of misidentification and could not, sua sponte, be charged to the jury over defendant's objection.

The court charged the jury that "the defendant has raised an affirmative defense", i.e., that the gun used was unloaded or inoperable and, in giving the charge, referred to "defendant's contention that the weapon he is charged with having displayed was not loaded, was not operable." Defendant, in fact, did not raise this defense; rather, he relied solely on the defense of misidentification. Defendant objected not only to the court's charging the affirmative defense but also to the wording of the charge, which indicated that defendant raised the defense. In view of defendant's specific objection to this particular aspect of the charge, the prejudice issue is fully preserved.

A defendant is entitled to a charge on an affirmative de-

fense when there is sufficient evidence for a jury to find by a preponderance of the evidence that the elements of the defense are satisfied. *(People v Gilliard,* 72 NY2d 877, 878.) In my view, such a charge would be proper, defendant's objection to it notwithstanding, unless it conflicts with the proffered defense. Indeed, a trial court's failure, *sua sponte,* to instruct a jury as to an affirmative defense which is expressly written into the statute defining the crime and which finds support in the evidence has been held to constitute reversible error. *(See, e.g., People v McLeod,* 71 AD2d 930; *see also,* Penal Law § 160.15 [4].)

The majority, citing *People v DeGina* (72 NY2d 768), states that it is impermissible to foist upon the defendant an affirmative defense which is in direct conflict with the course he has charted. This principle is inapplicable here, however, since the defense that the gun used in the crime was not loaded or was inoperable does not conflict with the defense of mistaken identity. A defendant can plead both that he did not commit the crime and that the gun used in the crime was inoperable. As long as the two defenses are not inconsistent and a reasonable view of the evidence would support the affirmative defense, a court is within its discretion to include it in the charge. *(See,* CPL § 300.50.) This is especially true in a case like this where the defense is specifically provided for in the statute the defendant is charged with violating.

Here, the victim testified that he did not know whether the gun used in the crime was a "toy * * * or a real [pistol]." Thus, there is a reasonable view of the evidence that the gun was inoperable. Since an affirmative defense may be premised upon the evidence adduced by the People *(People v Willis,* 56 NY2d 743), the court was justified in using the victim's testimony as a basis to charge the defense. The court, however, charged the jury that it was defendant who had raised the defense, was contending that the gun was inoperable and was "point[ing] to" certain evidence suggesting that the gun might have been an imitation. Such language, totally unsolicited, had the potential to divert the jury's attention from the defense actually being raised and to which defendant was pointing. Thus, while reversal is called for, it is only because the particular wording of the charge as to the affirmative defense was prejudicial.

May 23, 1991 granted to the extent of deleting the decretal (first) paragraph thereof and substituting therefor the following: Judgment, Supreme Court, New York County (Harold J. Baer, Jr., J.), entered April 27, 1990, which, *inter alia,* granted defendant's cross-motion for divorce, awarded plaintiff maintenance in the amount of $600 per month commencing upon the signing of the judgment and terminating upon plaintiff's remarriage or the death of either party, directed defendant to pay *pendente lite* maintenance arrears and reimbursement for non-elective, non-reimbursed medical and dental expenses, and directed defendant to maintain a policy of health insurance covering all expenses not covered by Medicare, unanimously modified, without costs, on the law, the facts and in the exercise of discretion, to vacate that portion which directed defendant to maintain a policy of health insurance covering all expenses not covered by Medicare and to direct defendant to maintain the most comprehensive policy commercially available to provide plaintiff benefits for medical care, dental care, prescription drugs and related services not covered by Medicare and to further direct that, in addition to maintaining said policy, defendant shall pay for any unreimbursed, non-elective medical, dental, and pharmaceutical expenses incurred by plaintiff subsequent to entry of the judgment and prior to plaintiff's remarriage or the death of either party, up to the maximum of $3,000 per year, and otherwise affirmed. Concur—Carro, J. P., Milonas, Ellerin and Rubin, JJ.