[626 NYS2d 921]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES F. BRADLEY, Appellant.

Fourth Department, April 28, 1995

APPEARANCES OF COUNSEL

*Kevin Bradley,* Canisteo *(Terrance Connors* of counsel), for appellant.

*Kevin M. Dillon, District Attorney* of Erie County, Buffalo *(Donna Milling* of counsel), for respondent.

**OPINION OF THE COURT**

PINE, J.

I

On September 23, 1983, defendant, who was then age 63, shot and killed IRS collection agent Michael Dillon in the kitchen of defendant's home. Dillon was attempting to collect the remaining $500 owed from a 1981 settlement of a claim by the IRS against defendant of just over $2,500. According to the testimony of defendant's wife, a prosecution witness, defendant and Dillon were arguing; defendant told Dillon that he could not cover a check for that amount and would have to wait for his next Social Security check. Dillon, who was insisting on payment, asked defendant to consent to seizure of his property to satisfy the balance owed. Defendant left the kitchen and returned bearing an M-1 rifle. He ignored his wife's pleas to put the rifle away. He walked to within three feet of Dillon, who was seated, aimed the rifle at Dillon's torso,

and said, "Mike, are you prepared to meet your maker?" He shot Dillon once, then shot him again as Dillon attempted to stand, and finally, when Dillon fell to the floor, shot him again after kneeling down and feeling Dillon's pulse.

Defendant left the house and drove to the home of a friend who collected war souvenirs; he had promised to give him his rifle someday. Defendant offered the rifle to him as a "souvenir." Defendant then returned to his home, where the police arrested him.

Defendant was indicted for murder in the second degree under Penal Law § 125.25 (1). He interposed an insanity defense under Penal Law former § 30.05 (repealed by L 1984, ch 668, § 1, eff Nov. 1, 1984). That statute placed the burden of proof on the People to prove sanity. At trial, both the prosecution and defense introduced expert testimony on defendant's mental state at the time the crime was committed.

When Supreme Court inquired about requests to charge lesser included offenses, the People asked for manslaughter in the first degree "under the extreme emotional distress theory." Defense counsel argued that, although it might legally be a lesser included offense, the evidence did not support it. He also argued that the charge imposed a burden on defendant that he did not request and that it would be "cumbersome and confusing for the jury." In addition, defense counsel argued that the People "having made the charge in the indictment they, of course, could have included a lesser included offense in the indictment and chose not to." To the extent that defense counsel thereby argued that the People were foreclosed from requesting a proper lesser included offense charge by virtue of having failed to include it in an indictment, he was in error.

As part of its charge on murder in the second degree, the court charged the affirmative defense of extreme emotional disturbance (Penal Law § 125.25 [1] [a]). The court, however, did not expressly charge manslaughter in the first degree (Penal Law § 125.20 [2]) as a lesser included offense of murder in the second degree.

The jury found that defendant was legally sane at the time of the shooting but that he was acting under the influence of extreme emotional disturbance, thereby finding him guilty of manslaughter in the first degree.

## II

Defendant argues that the court erred in submitting the affirmative defense of extreme emotional disturbance to the

jury over his objection. He argues that reversal is required because the affirmative defense is not supported by a reasonable view of the evidence; the submission of it imposed a burden of proof on defendant that he did not request; and the affirmative defense conflicted with his own insanity defense. We disagree.

## III

Defendant's first argument is that the affirmative defense of extreme emotional disturbance is not supported by a reasonable view of the evidence. To warrant submission of the affirmative defense to the jury, a court must determine that there is sufficient credible evidence for the jury to find by a preponderance of the evidence that the defense was established *(People v White,* 79 NY2d 900, 902-903). "The affirmative defense has two components: an objective element requiring sufficient proof that there was a reasonable explanation or excuse for the emotional disturbance, and a subjective element requiring sufficient proof that the conduct was influenced by an extreme emotional disturbance at the time the alleged crime was committed" *(People v White, supra,* at 903).

Defendant argues that neither the objective nor subjective element was met. We disagree, and conclude that there was sufficient proof to support both elements. Indeed, the testimony of defendant's own expert, Dr. Brian Joseph, provided ample support for both elements. Dr. Joseph, a psychiatrist, testified that defendant viewed the IRS as a "domestic enemy of the United States" and as the "secret police" who were "vandalizing Americans." He further testified that defendant believed that he "was killing a burglar" and "defending the Constitution." Defendant told Dr. Joseph that Dillon "was a burglar in the house and that he was going to administer the death penalty, that what he was encountering was a bad public servant." One officer testified that defendant told him on the way to police headquarters, "[T]hey were harassing me, the revenuer, they are harassing my wife, so I told him to say your prayers, I couldn't take them bothering her anymore and that was it."

The People's expert, Dr. Syed Farooq, also a psychiatrist, testified that defendant was not delusional, i.e., he did not have "baseless beliefs." Dr. Farooq testified that defendant

stated that the IRS was harassing him and that the IRS audited him within six months after he had resigned from working for the IRS. Defendant believed that the audit was an act of revenge. Dr. Farooq testified that "[t]here was enough reality to make him feel that way." Defendant told Dr. Farooq that, just before he shot Dillon, he thought about the consequences of his actions, i.e., that he would go to jail or to the electric chair. That indicated to Dr. Farooq that defendant knew that he was breaking the law.

Defendant's wife, who, as previously noted, was a prosecution witness, testified that, when defendant entered the kitchen with the rifle, he "looked as though he were entranced"; when he aimed the rifle at Dillon, defendant's "voice had changed and it sounds as though a person talking through laryngitis, it was very tight."

Defendant contends that the objective element was not met because defendant had an accurate perception of the external situation, i.e., he knew that an IRS agent was attempting to collect taxes that he owed. He argues that his peculiar reasoning that he was being harassed by a domestic enemy of the United States and that Dillon was a burglar cannot be deemed objectively reasonable.

Defendant mischaracterizes the objective element component. It requires not that a defendant's *reasoning* be objectively reasonable; rather, it requires that there be a reasonable explanation or excuse for the emotional disturbance. The determination whether there was a reasonable explanation or excuse "should be made by viewing the subjective, internal situation in which the defendant found himself and the external circumstances as he perceived them at the time, *however inaccurate that perception may have been,* and assessing from that standpoint whether the explanation or excuse for his emotional disturbance was reasonable" *(People v Casassa,* 49 NY2d 668, 679, *cert denied* 449 US 842 [emphasis added]). Here, defendant subjectively viewed the IRS as an enemy, and Dillon as a burglar; based upon that subjective perception, there is an objectively reasonable basis for finding extreme emotional disturbance at the time he shot Dillon.

Defendant's reliance on *People v Frank* (122 AD2d 620) is misplaced. In *Frank,* this Court reversed defendant's conviction of manslaughter in the first degree. At the People's request and over defendant's objection, manslaughter in the first degree while under the influence of extreme emotional

disturbance (Penal Law § 125.20 [2]) was charged as a lesser included offense of murder in the second degree. We held that neither the subjective nor objective element was met and thus that there was no reasonable view of the evidence on which a jury could find that defendant committed the lesser but not the greater crime. We concluded that, while the proof could have supported a finding that defendant was "drunk and possibly angry, embarrassed or jealous, there was no evidence of any mental disorder or of any unusual and overwhelming stress that could result in a loss of self-control" *(People v Frank, supra,* at 620).

Here, there was evidence of both. Defendant's expert testified that defendant suffered from a "paranoid personality disorder of a rather severe variety." Without question this record contains evidence that defendant had a mental disorder. There also was evidence of "unusual and overwhelming stress"; defendant was certain that the IRS was harassing him and that Dillon was a burglar in his home.

We reject the contention that, because defendant was described as being in a trance when he shot Dillon, he was not "emotional." Defendant argues in effect that a "sudden explosion of emotion" is required. The essence of extreme emotional disturbance, however, is not an emotional outburst but, rather, a loss of self-control *(see, People v Moye,* 66 NY2d 887, 890). A jury could infer that " 'something snapped' " within defendant, causing him to go into a trance-like state, and resulting in a loss of self-control *(People v Moye, supra,* at 890).

## IV

Defendant also argues that the submission of the affirmative defense imposed a burden on him that he did not request and that conflicted with his own insanity defense.

We reject at the outset defendant's contention that the affirmative defense of extreme emotional disturbance "conflicted" with the insanity defense. It is well established that extreme emotional disturbance "is a lesser form of mental infirmity than insanity" *(People v Casassa, supra,* at 677). "The purpose of the extreme emotional disturbance defense is to permit the defendant to show that his actions were caused by a mental infirmity not arising to the level of insanity, and that he is less culpable for having committed them" *(People v Patterson,* 39 NY2d 288, 302). The lower mental state of extreme emotional disturbance is "necessarily subsumed"

within the higher mental state of mental infirmity *(People v Green,* 56 NY2d 427, 433, *rearg denied* 57 NY2d 775), and thus it cannot logically be seen as inconsistent.

The conclusion that the affirmative defense of extreme emotional disturbance is not inconsistent with an insanity defense compels the further conclusion that defendant's reliance on *People v DeGina* (72 NY2d 768) is misplaced. In *DeGina,* the Court declined to reach defendant's argument "that it is invariably reversible error to charge a jury on an affirmative defense disavowed by defendant" *(People v DeGina, supra,* at 772). On the facts of that case, the Court concluded that there was reversible error.

In *DeGina,* defendant raised as a defense to a charge of selling drugs that he had not engaged in the proscribed conduct at all; he contended that he had sold only talcum powder. At the prosecutor's request and over defendant's objection, an entrapment charge was given. In reversing the conviction, the Court of Appeals noted that, while defendant denied having sold any drugs, the entrapment defense, which is an affirmative defense, proceeded on the premise that he had. The Court concluded that the erroneous instruction on entrapment prejudiced defendant in at least two respects. Neither applies here.

First, the Court in *DeGina* noted that a defendant has the right to chart his own defense "and in this case the entrapment charge undermined the defense chosen by defendant" *(People v DeGina, supra,* at 776; *see also, People v Maldonado,* 175 AD2d 698, 699-700). Indeed, the Court noted that, while a defendant is not prohibited from raising contradictory defenses, "it is plainly a hazardous tactic, for it not only risks confusing the jury as to the nature of the defense but also may well taint a defendant's credibility in the eyes of the jury" *(People v DeGina, supra,* at 777). Here, as we concluded above, the affirmative defense did not undermine the defense chosen by defendant but, rather, provided an alternative for leniency in the event that the jury found that defendant was legally sane.

Second, the Court in *DeGina* concluded that the trial court imposed on defendant an affirmative burden of proof that he had not undertaken by his own defense theory and "that the jury was bound to conclude he had failed to sustain" *(People v DeGina, supra,* at 777). While in *DeGina* the Court expressly concluded that defendant did not himself raise the defense,

here the testimony of defendant's expert supported the affirmative defense. In fact, in his opening statement, defense counsel described defendant as a "grenade" and Dillon as "an enemy" who was "put in harm's way by his own superiors." Thus, the danger that defendant could be prejudiced by having failed to submit proof to support an affirmative defense that he had the burden of establishing is not present here. Indeed, in attempting to raise a reasonable doubt that he was sane, defendant necessarily had to attempt to prove simultaneously the lesser form of mental infirmity, i.e., extreme emotional disturbance. Furthermore, the jury found, unlike *DeGina,* that defendant met the affirmative burden imposed upon him. Here, there was no error because the affirmative defense was not inconsistent with defendant's chosen strategy, defendant's own proof supported it, and defendant met the burden of proving it.

## V

Of no small moment is the fact that manslaughter in the first degree is unquestionably a lesser included offense of murder in the second degree under the first prong of the *Glover* test *(see, People v Glover,* 57 NY2d 61; *see, e.g., People v Frank,* 122 AD2d 620, *supra; see also, People v White,* 125 AD2d 932, 933, *lv denied* 69 NY2d 956). As we previously concluded, a reasonable view of the evidence supports the finding that defendant committed the lesser crime, i.e., he was acting under the influence of extreme emotional disturbance, and thus the second *Glover* prong was met as well. Indeed, the People asked the trial court to charge down to manslaughter in the first degree. CPL 300.50 mandates that, if there is a reasonable view of the evidence to support a finding that defendant committed a lesser offense than the offense charged but did not commit the greater, the court "must" so charge upon request "by either party" (CPL 300.50 [2]).

Based upon the People's request, the court should have charged manslaughter in the first degree under Penal Law § 125.20 (2): with intent to cause the death of another person, a defendant causes the death of that person or a third person "under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance." Instead, however, the court charged the statutory language of Penal Law § 125.25 (1) (a), under which extreme emotional disturbance is an affirmative defense, thereby plac-

ing the burden of proof on defendant. In this case, however, the fact that the charge was not technically given as a lesser included offense is a distinction without a difference.

Defendant argues that he was entitled to "roll the dice" and insist that the jury either convict him of murder in the second degree or acquit him based upon his insanity defense. A defendant is never entitled to that "all or nothing" option, however, if the People request a proper lesser included offense that meets both *Glover* prongs. A defendant has no absolute right to have only one crime charged. Because manslaughter in the first degree was a proper lesser included offense under both *Glover* prongs, the People were entitled to have the jury consider it, and defendant was not entitled to prevent it.

## VI

We have reviewed defendant's remaining contentions and conclude that they lack merit. Accordingly, the judgment of conviction should be affirmed.

GREEN, J. P. (dissenting).

We respectfully dissent. In our view, Supreme Court committed reversible error in submitting the affirmative defense of extreme emotional disturbance to the jury over defendant's objection.

Neither the arguments of counsel nor the evidence presented by the defense supports the conclusion that defendant raised the affirmative defense of extreme emotional disturbance (*see,* Penal Law § 125.25 [1] [a]). Indeed, the prosecutor, in his opening statement, acknowledged the People's burden to prove beyond a reasonable doubt that defendant was sane when he committed the acts charged in the indictment. In his opening and closing statements, defense counsel consistently maintained that the single issue for the jury's determination was whether defendant lacked criminal responsibility by reason of mental disease or defect (*see,* Penal Law former § 30.05). The single metaphorical reference to defendant as a "grenade", considered in context, does not amount to an adoption of the affirmative defense of extreme emotional disturbance (*see, People v DeGina,* 72 NY2d 768, 776 [counsel's use of the term "ensnare" in opening did not convert defense to one of entrapment]). Furthermore, we cannot agree with the majority that presenting evidence that might arguably support a defense is equivalent to raising that defense affirmatively (*cf., People v Anderson,* 174 AD2d 684, *lv denied* 78 NY2d 961).

Contrary to the majority, therefore, we conclude "from a fair reading of the record that defendant did not raise the * * * defense" of extreme emotional disturbance *(People v DeGina, supra,* at 776).

By submitting that affirmative defense to the jury over defendant's objection, the court clearly violated the unquestionable right of defendant to chart his own defense *(see, People v DeGina, supra,* at 776; *People v Maldonado,* 175 AD2d 698; *People v Martin,* 66 AD2d 995; *People v Cofer,* 48 AD2d 818; *see also, People v Albright,* 65 NY2d 666, 668; *People v Sterling,* 210 AD2d 358; *People v Harris,* 109 AD2d 351, 366). The violation of that right is not overcome by the theoretical similarity between the defense chosen by defendant and the defense thrust upon him. The fact that extreme emotional disturbance may be characterized as "a lesser form of mental infirmity than insanity" *(People v Casassa,* 49 NY2d 668, 677, *cert denied* 449 US 842) does not imply that extreme emotional disturbance is "necessarily subsumed" within insanity in every case or that the two defenses are invariably consistent.

We reject the majority's attempt to import principles governing the submission of lesser included offenses *(see,* CPL 300.50) into those statutorily defined defenses. Nothing in the language or history of those statutes supports the attempted characterization of the affirmative defense of extreme emotional disturbance as a "lesser included defense" of the insanity defense. This case, in fact, illustrates the distinctions and potential conflict between those defenses.

In this case defendant asserted the defense that he suffered from a mental disease or defect that deprived him of the "substantial capacity to know or appreciate either * * * [t]he nature and consequence of such conduct * * * [or t]hat such conduct was wrong" (Penal Law former § 30.05 [1]). He presented evidence that his mental condition underwent a progressive deterioration until the day of the murder, when he calmly and deliberately executed the IRS agent. Defendant's position was not that the murder was the result of "an understandable human response deserving of mercy" *(People v Casassa, supra,* at 680-681) or the product of the loss of self-control associated with the defense of extreme emotional disturbance *(see, People v Moye,* 66 NY2d 887, 890; *People v Marinaccio,* 190 AD2d 819, *lv denied* 81 NY2d 1016; *People v Finney,* 181 AD2d 789, *lv denied* 79 NY2d 1049; *People v Feris,* 144 AD2d 691, 692). Rather, defendant maintained that his

conduct was attributable to bizarre, paranoid thought processes arising from a mental disease or defect that had been steadily worsening in the months preceding the murder. In other words, defendant was not claiming a temporary loss of the ability to *control* his conduct, but rather a substantial impairment of the ability to *understand* the moral and legal consequences of his actions. Those positions may be compatible in a given case and a murder defendant may consistently assert the defense of extreme emotional disturbance in conjunction with the defense of insanity *(see, e.g., People v Young,* 65 NY2d 103; *People v Yong Ho Han,* 200 AD2d 780, *lv denied* 83 NY2d 916; *People v Fischl,* 182 AD2d 699; *People v Barnes,* 175 AD2d 626, *lv denied* 79 NY2d 824; *People v Oakes,* 168 AD2d 893, *lv denied* 78 NY2d 957). The fact remains, however, that this defendant did not seek to prove both defenses, regardless of how compatible those defenses might be in other circumstances.

We cannot agree with the majority that charging both defenses did not prejudice defendant. Allowing the jury to consider an affirmative defense that defendant did not raise or attempt to prove necessarily weakened the defense that he did present. "[A] defendant is entitled to establish his own defense, and it is impermissible for the trial court to foist upon him an affirmative defense which * * * is in direct conflict with the course he has charted" *(People v Maldonado, supra,* at 700).

Furthermore, by charging an affirmative defense that defendant did not raise and, in fact, expressly disavowed, "the court imposed on defendant an affirmative burden of proof he had not undertaken by his defense theory" *(People v DeGina, supra,* at 777). Defendant advanced only the "defense" of insanity *(see,* Penal Law § 25.00 [1]; former § 30.05). Defendant came "forward with sufficient evidence to rebut the presumption of sanity * * * and the People [were] consequently required to bear the additional burden of proving the defendant sane beyond a reasonable doubt (see, e.g., *People v Silver,* 33 NY2d 475)" *(People v Santarelli,* 49 NY2d 241, 248). Extreme emotional disturbance, on the other hand, is an "affirmative defense", which defendant bore the burden of proving by a preponderance of the evidence (Penal Law § 25.00 [2]; *see,* Penal Law § 125.25 [1] [a]). "In that defendant advanced only a defense—as to which he had no affirmative burden of proof *(see, People v Albright,* 65 NY2d 666)—the suggestion that he had assumed a burden of proof in connection with his defense

itself had the potential to mislead the jury" *(People v DeGina, supra,* at 778, citing *People v Victor,* 62 NY2d 374, 378).

The majority suggests that the court should have charged manslaughter in the first degree under Penal Law § 125.20 (2), without imposing the burden of proving extreme emotional disturbance upon defendant *(see, People v Emick,* 103 AD2d 643, 657), but that the court did not err in failing so to charge. That conclusion, however, is not supported by the language of the first degree manslaughter statute, which expressly provides that, "[t]he fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved *in any prosecution initiated under this subdivision"* (emphasis supplied). This prosecution was unquestionably initiated under Penal Law § 125.25 (1), and thus extreme emotional disturbance was necessarily an affirmative defense that defendant was required to prove *(see,* Penal Law § 125.25 [1] [a]). Furthermore, when the court, either *sua sponte* or pursuant to a request, charges the lesser included offense of manslaughter in the first degree (Penal Law § 125.20 [2]; CPL 300.50 [1]; 1.20 [37]; *People v Green,* 56 NY2d 427), it is obliged to charge the insanity defense as it relates to that charge, consistent with the defense advanced by defendant *(People v Young,* 65 NY2d 103, 105, *supra).* In any event, the question whether the court could have properly submitted manslaughter in the first degree to the jury as a lesser included offense under the manslaughter statute rather than the murder statute is beside the point. The court *in fact* instructed the jury that extreme emotional disturbance is an "affirmative defense" that "must be established by a preponderance of the credible evidence."

Because extreme emotional disturbance is an affirmative defense when only murder in the second degree has been charged in the indictment, charging down to manslaughter in the first degree is not the routine matter portrayed by the majority. This case does not present the typical situation where the court, in deciding whether to submit a lesser included offense upon the People's request, may simply apply the *Glover* test *(see, People v Glover,* 57 NY2d 61, 63-64; CPL 300.50 [1]). The lesser included offense at issue in this case is defined in terms of the affirmative defense of extreme emotional disturbance. Thus, the court was required to consider not only whether a "reasonable view of the evidence" (CPL 300.50 [1]) supported the defense, but whether defendant had

undertaken the burden of proving that defense *(see, People v DeGina,* 72 NY2d 768, 777-778, *supra).* Defendant did not assume that burden in this case. "Imposing the burden of proving [extreme emotional disturbance] on defendant, who had not raised it, constituted an abuse of the affirmative defense in derogation of defendant's right to have the State bear the entire burden of proof" *(People v DeGina, supra,* at 776; *see, People v Victor,* 62 NY2d 374, *supra; People v Chesler,* 50 NY2d 203, 210; *see also, Mullaney v Wilbur,* 421 US 684).

Because defendant was convicted of a charge that should not have been submitted to the jury over his objection, we would reverse the conviction and dismiss the indictment *(see, People v Frank,* 122 AD2d 620; *People v Bacalocostantis,* 111 AD2d 991).

FALLON and CALLAHAN, JJ., concur with PINE, J.; GREEN, J. P., dissents and votes to reverse in a separate opinion in which DAVIS, J., concurs.

Judgment affirmed.