THIRD DEPARTMENT, DECEMBER, 1999

(December 2, 1999)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLIFTON WILLIAMSON, Also Known as MALEEK, Appellant. [699 NYS2d 749] —Mikoll, J. P. Appeal from a judgment of the Supreme Court (Lamont, J.), rendered May 2, 1997 in Albany County, upon a verdict convicting defendant of the crimes of murder in the second degree and attempted robbery in the first degree.

Defendant's indictment on charges of felony murder and attempted robbery in the first degree arose out of his alleged involvement with two codefendants in the aborted robbery of taxicab driver Michael Cook on October 23, 1995, during the course of which Cook was shot to death by one of the other

participants. The two codefendants were arrested at the scene, where Cook's taxi had struck a building and come to rest on Franklin Street near Plum Street in the City of Albany. The following afternoon, defendant surrendered to police and subsequently gave an oral and written confession which formed the basis for his subsequent conviction, from which he now appeals.

Defendant's first claim of error relates to his confession to Detective Kenneth Wilcox of the Albany Police Department. Defendant contends, essentially, that his statement was involuntarily given because the police conspired to prevent his father from being present while he was questioned by Wilcox at the hospital. We cannot agree. The suppression hearing revealed the following. Defendant, accompanied by his father, surrendered to Sergeant Arthur Phinney of the Albany Police Department in the early afternoon of October 23, 1995. Phinney turned defendant over to Wilcox, who advised defendant of his *Miranda* rights in the presence of his father. Upon determining that defendant required medical attention for an injury to his leg, Wilcox transported defendant to the hospital for treatment. *Miranda* warnings were administered again, whereupon defendant indicated that he understood his rights and agreed to give a statement to Wilcox. Defendant's father testified that he was denied access to defendant while he was being questioned at the hospital.

As defendant was not a legal minor, there was no requirement that his father be present during questioning (*see, People v Washington*, 209 AD2d 817, *lv denied* 85 NY2d 944). His reliance on *People v Bevilacqua* (45 NY2d 508) is misplaced. Nothing in the record indicates that defendant ever requested his father's presence during questioning, that the police employed any deception or trickery to prevent his father from being present or that his father's absence precluded defendant from obtaining counsel during questioning.

We likewise reject defendant's claim that the prosecutor's use of a peremptory challenge violated his constitutional equal protection rights. Following defendant's objection to the prosecution's peremptory challenge of a juror who, like defendant, was African-American, Supreme Court required the prosecutor to put forth a race-neutral explanation for the strike. The prosecutor's response was that although he challenged the juror for several reasons, his primary reason was her statement that she was a lifelong resident of the same neighborhood as defendant and his codefendants and was familiar with some of the people involved in the incident. We

perceive no basis on which to disturb Supreme Court's finding that this explanation for his challenge was race neutral (*see, People v Dolphy*, 257 AD2d 681, *lv denied* 93 NY2d 872; *People v Crawford*, 256 AD2d 719, *lv denied* 92 NY2d 1048).

We reach a similar conclusion with respect to defendant's concededly unpreserved claim that Supreme Court violated his State and Federal due process rights during the voir dire of the jury when it informed the panel that this was not a death penalty case. Contrary to defendant's contention that the court's remarks suggested to the prospective jurors that a conviction in his case was less important because the death penalty was not involved, it is clear that the court was seeking to dispel confusion among the jurors by distinguishing defendant's case from that of another taxicab driver shooting in Albany County where the death penalty was being sought. Moreover, we note that similar claims of error based on advice that the death penalty is not involved have been reviewed elsewhere and found not to constitute a basis for reversal (*see, People v Urena*, 183 AD2d 673, *lv denied* 81 NY2d 848; *see also, People v Stallings*, 186 AD2d 445, 446, *lv denied* 81 NY2d 794).

Defendant next contends that Supreme Court committed reversible error in the manner and substance of its response to the jury's request for supplemental instructions. We observe that trial courts confronted with requests for supplemental instructions must perform the delicate operation of fashioning a response which meaningfully answers the jury's inquiry while at the same time working no prejudice to the defendant (*see,* CPL 310.30; *People v Malloy*, 55 NY2d 296, 301, *cert denied* 459 US 847; *People v Curet*, 256 AD2d 1017; *People v Pyne*, 223 AD2d 910, 912, *lv denied* 88 NY2d 940). Here, in response to the jury's request for a definition or clarification of "truthful in its entirety", Supreme Court advised counsel that it intended to repeat its charge regarding the truthfulness of a statement. Defendant raised no objection. After reiterating its original charge, the court added that, as defendant's statement was three pages long, the jury was permitted to give weight to any part thereof as it found to be truthful and to disregard any part thereof as it found false. Defendant objected that by virtue of its added reference to the length of the statement, the court's supplemental instruction went beyond that which the court originally proposed.

The other jury request at issue sought "definitions/clarification of dangerously close and in proximity to" and further inquired whether there are "any circumstances that would

allow someone to at one time be dangerously close and in proximity to attempted robbery in the first degree and then remove themselves from that situation". Before addressing the propriety of Supreme Court's response, we must put the jury's request in context. According to defendant's statement, he and his two codefendants formulated a plan to rob a taxicab driver and summoned and entered Cook's cab in furtherance thereof. Defendant acknowledged awareness that at least one of his accomplices (Ty) was armed. After being driven to the requested destination, defendant stated that he exited the cab and pretended to knock on a door, and then reentered the cab. At that point, defendant stated that he asked the driver what the fare was and "I then paid him and me and [the third codefendant] was about to get out when Ty did something and the cab driver got scared and he just step[ped] on the gas. * * * I then heard a shot and * * * we crashed into the house. After the cab stopped I then got out and ran."

Prior to submission of the case to the jury, the prosecution requested that the jurors be instructed on the affirmative defense of renunciation. Finding no reasonable view of the evidence to justify it, Supreme Court denied the prosecution's request. Confronted with the jury's request, defense counsel urged the court to advise the jury that it could or would not answer its question. The court rejected this suggestion, deeming it necessary to provide a meaningful response to its query, noting also that it intended to clarify what it perceived to be the jury's confusion with respect to the concept of "dangerously close" in relation to an attempt to commit a crime. After exploring with counsel the various forms which its response could take, the court properly determined to advise the jury that while there did exist an affirmative defense of renunciation, the defense had no application to the case and accordingly the jury was not instructed concerning it (see, People v Starr, 213 AD2d 758, lv denied 85 NY2d 980).

Turning to defendant's complaints about the prosecutor's summation, we agree that the prosecutor's extended references to the victim and his family, continuing even after being directed by Supreme Court to move on, were blatantly improper emotional appeals to the jury. Beyond this discrete occurrence, however, we find no other evidence of a "flagrant and pervasive pattern of prosecutorial misconduct" requiring a new trial (People v Demming, 116 AD2d 886, 887, lv denied 67 NY2d 941; see, People v Pickens, 229 AD2d 607, 609, lv denied 89 NY2d 866). Importantly, Supreme Court instructed the jury that sympathy was not to play a role in their deliberations or

verdict. Indeed, that the jurors heeded this instruction and were not animated by the prosecutor's misconduct is evident from the length of their deliberations and numerous, extensive requests for testimony and additional instructions, revealing that they were focused on resolving the issues presented to them in accordance with the evidence and the law.

Finally, defendant asserts that Supreme Court's submission of a verdict sheet which did not contain "not guilty" as a possible verdict was prejudicial error. Notably, the verdict sheet as submitted did not list any possible verdicts; a blank space was left next to each of the two counts. We note that as defendant failed to object to the verdict sheet on the basis now asserted, his present claim is unpreserved for our review. Were we to consider his argument, however, we would find it lacking in merit since the court fully instructed the jury on its possible verdicts, including a finding of "not guilty" (*see, People v Piazza*, 48 NY2d 151, 165; *People v Brown*, 247 AD2d 926, *lv denied* 91 NY2d 1005).

Mercure, Yesawich Jr., Peters and Mugglin, JJ., concur. Ordered that the judgment is affirmed.