# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**496**

**KA 09-01776**

PRESENT: SCUDDER, P.J., CENTRA, FAHEY, SCONIERS, AND VALENTINO, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                      MEMORANDUM AND ORDER

ROBERT D. BREWER, DEFENDANT-APPELLANT.
(APPEAL NO. 2.)

---

EASTON THOMPSON KASPEREK SHIFFRIN LLP, ROCHESTER (WILLIAM T. EASTON OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (GEOFFREY KAEUPER OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Monroe County (David D. Egan, J.), rendered July 10, 2009.  The judgment convicted defendant, upon a jury verdict, of murder in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law and a new trial is granted on count one of the indictment.

Memorandum:  On appeal from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]), defendant contends that an executed cooperation agreement created a legal impediment to the People's prosecution of him for intentional murder and thus that Supreme Court erred in refusing to dismiss that count of the indictment.  We reject that contention.  In his written statement, the admissibility of which we upheld in *People v Brewer* ([appeal No. 1] ___ AD3d ___ [June 20, 2014]), defendant admitted that he brought a loaded weapon to a residence with the intent that he and others would commit a murder.  He stated, however, that, when the time came to the pull the trigger, he was unable to do so.  Defendant further stated that a codefendant grabbed the gun from his hand and used it to kill the victim.  Although that codefendant had already implicated defendant as the shooter, the prosecutor entered into a written cooperation agreement with defendant.  Pursuant to that agreement, defendant agreed to provide truthful statements and/or testimony against all others involved in the murder.  He also agreed that he would take a polygraph examination; truthfully testify at all court proceedings; and "[n]ot engage in any conduct which would constitute any violation of the Penal Law . . . during the pendency of th[e] Agreement."  The determination whether defendant "successfully completed performance" of the agreement rested in the sole discretion of the prosecutor.  Upon successful completion of the agreement,

defendant would be permitted to plead guilty to attempted conspiracy in the second degree with a sentence recommendation of 4 to 12 years. If the prosecutor concluded, however, that defendant had not successfully completed the agreement, he could be prosecuted for, inter alia, criminal possession of a weapon in the second degree. In addition, the agreement provided that, "[s]hould [d]efendant commit any further criminal offenses or provide false or misleading information or statements, withhold information or violate any provision of th[e] Agreement, he [would] be subject to prosecution for any . . . criminal violations he committed as well as for the crimes encompassed by th[e] Agreement and for which [he] could have been charged initially, had th[e] Agreement not been entered into, and for any perjury, making false statements, or failure to testify." The prosecutor could also "prosecute the defendant to the full extent of the law on the charges which are the subject of th[e] Agreement."

After execution of the agreement, a second codefendant identified defendant as the shooter. As a result, the prosecution terminated the agreement and indicted defendant on charges of, inter alia, intentional murder (Penal Law § 125.25 [1]) and criminal possession of a weapon in the second degree ([CPW 2d] § 265.03 [3]). In his omnibus motion, defendant sought dismissal of, inter alia, the intentional murder count on the ground that the agreement barred the People's prosecution of him for that crime. While we agree with defendant that the court had the authority to hold a hearing to determine whether a violation occurred (see *People v Jairam*, 10 AD3d 455, 456), we conclude under the circumstances here that the court did not err in denying that part of defendant's omnibus motion without a hearing. The evidence in the record is sufficient to establish as a matter of law that defendant had agreed that the prosecutor would have the discretion to determine whether defendant had successfully completed the agreement or whether he had violated its terms. Inasmuch as the prosecutor's determination that defendant had failed to provide truthful information "was made in good faith," we conclude that the court properly refused to dismiss the intentional murder count of the indictment (*People v Anonymous*, 253 AD2d 709, 710, *lv denied* 92 NY2d 980, *reconsideration denied* 93 NY2d 850; *see People v Anonymous*, 251 AD2d 179, 179). We also reject defendant's contention that he is entitled to specific performance of the agreement because he detrimentally relied on it. At the time defendant entered into the agreement, he had already given his statement to the police, and there is no evidence of defendant's further reliance on the agreement or performance of the agreement in the month between its execution and revocation (*cf. People v Danny G.*, 61 NY2d 169, 175-176; *People v Ross G.*, 163 AD2d 529, 530-531).

Viewing the evidence in light of the elements of the crime of intentional murder as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we reject defendant's further contention that the verdict is against the weight of the evidence (*see generally People v Bleakley*, 69 NY2d 490, 495).

We conclude, however, that we must reverse the judgment and grant a new trial on the count of the indictment charging defendant with

intentional murder.  Defendant was initially tried on the entire indictment.  The first trial ended with a conviction of CPW 2d (*Brewer*, ___ AD3d at ___), a hung jury on the intentional murder count and an acquittal on all other counts.  The court declared a mistrial on the intentional murder count and ordered a new trial on that count only.  At both the first trial and the second trial, the defense theory was that defendant did not have the intent to kill the victim at the time the codefendant shot the victim.  By that time, defendant had made a conscious decision against firing the weapon or committing the murder.  At the first trial, defense counsel initially requested a charge on the affirmative defense of renunciation.  Defense counsel subsequently withdrew that request and argued in summation that defendant could not be liable as an accessory because he had lacked the necessary shared intent to kill.  The first jury was deadlocked with respect to the intentional murder count:  10 for acquittal and 2 for conviction.

At the second trial, there was no mention of the affirmative defense of renunciation until the jury requested instruction on a change of intent, i.e., "changing your mind at the last minute."  In response to that jury note, the court proposed to instruct the jury on the affirmative defense of renunciation.  Defense counsel vigorously objected, noting that he had repeatedly informed the jury that defendant had no burden of proof and that there had been no evidence presented in support of that affirmative defense.  Over defense counsel's objection, the court read that instruction to the jury.  That was error.

It is well settled that a court cannot instruct a jury on an affirmative defense where the defendant objects to the instruction (*see People v Bradley*, 88 NY2d 901, 902-903; *People v DeGina*, 72 NY2d 768, 776-778; *People v Martin* [appeal No. 1], 66 AD2d 995, 995-996).  When a court does so, it impairs a defendant's "unquestionabl[e] . . . right to chart his [or her] own defense" (*DeGina*, 72 NY2d at 776); it may "undermine[] the defense chosen by [the] defendant[,] . . . [and] place[] [the] defendant in the midst of contradictory defenses" (*id.* at 776-777); and it indisputably "impose[s] on [the] defendant an affirmative burden of proof he [or she] had not undertaken by his [or her] defense theory" (*id.* at 777).  The imposition of a burden of proof on a defendant who has not elected to pursue an affirmative defense "constitute[s] an abuse of the affirmative defense in deorgation of [a] defendant's right to have the State bear the entire burden of proof" (*id.* at 776).  The Third Department has even stated that a court "is without the jurisdiction to, sua sponte, instruct the jury on an affirmative defense or force a defendant to raise such a defense" (*People v Ciborowski*, 302 AD2d 620, 622, *lv denied* 100 NY2d 579).

Where, as here, the defendant has repeatedly advanced only a defense, which carries no burden of proof, "the suggestion that he [or she] had assumed a burden of proof . . . ha[s] the potential to mislead the jury" (*DeGina*, 72 NY2d at 778).  The affirmative defense of renunciation requires a defendant to meet an initial burden of establishing, by a preponderance of the evidence (*see generally People*

*v Butts*, 72 NY2d 746, 749 n 1), that he or she "withdrew from participation in such offense prior to the commission thereof *and made a substantial effort to prevent the commission thereof*" (Penal Law § 40.10 [1] [emphasis added]). There was no evidence presented at trial that defendant made any effort, let alone a substantial one, to prevent the commission of the murder. The only conclusion the jury could have drawn was that defendant had failed to meet his burden of establishing the affirmative defense. Here, as in *Bradley*, "[t]he imposition of an affirmative burden of proof over defense objection and the involuntary undermining of the defendant's chosen defense strategy resulted in serious prejudice that requires reversal" (88 NY2d at 904; *see People v Albright*, 65 NY2d 666, 668; *People v Maldonado*, 175 AD2d 698, 699-700; *Martin*, 66 AD2d at 996; *People v Cofer*, 48 AD2d 818, 818; *cf. People v Green*, 108 AD3d 782, 785, *lv denied* 21 NY3d 1074; *People v Diaz*, 39 AD3d 1244, 1245, *lv denied* 9 NY3d 842). We therefore reverse the judgment and grant a new trial on count one of the indictment.

While we agree with the People that there are limited circumstances where a court may give an instruction on an affirmative defense over a defendant's objection, i.e., when it is the only viable defense raised, we note that the court may not do so where, as here, a defendant has concluded his or her summation (*see People v Crumpler*, 242 AD2d 956, 958, *lv denied* 91 NY2d 871). We further agree with the People that the court was required to provide a meaningful response to the jury's inquiry. The court was thus forced to "perform the delicate operation of fashioning a response which meaningfully answer[ed] the jury's inquiry while at the same time working no prejudice to the defendant" (*People v Williamson*, 267 AD2d 487, 489, *lv denied* 94 NY2d 886). In our view, the courts in *Williamson* and *People v Starr* (213 AD2d 758, 760-761, *lv denied* 85 NY2d 980) gave appropriate responses when faced with similar situations. In each case, the jury inquired about a potentially relevant affirmative defense that the defendant had not pursued, but the court forestalled the jury's consideration of the affirmative defense. In *Williamson*, the court informed the jury that, although the affirmative defense of renunciation existed, it "had no application to the case" and the jury therefore had not been "instructed concerning it" (267 AD2d at 490). In *Starr*, the court instructed the jury that the affirmative defense of entrapment "had not been raised" and that the jury had not been "instructed . . . with respect to such defense" (213 AD2d at 761). The court herein should have taken a similar approach when responding to the jury's note.

Based on our determination, we do not address defendant's remaining contentions.

Entered:  June 20, 2014                        Frances E. Cafarell
                                               Clerk of the Court