People v Brewer (2021 NY Slip Op 04461)





People v Brewer


2021 NY Slip Op 04461


Decided on July 16, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 16, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., NEMOYER, TROUTMAN, AND BANNISTER, JJ.


590 KA 15-01823

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
ROBERT D. BREWER, DEFENDANT-APPELLANT. 






THE ABBATOY LAW FIRM, PLLC, ROCHESTER (DAVID M. ABBATOY, JR., OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LEAH R. MERVINE OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Francis A. Affronti, J.), rendered September 22, 2015. The judgment convicted defendant upon a jury verdict of murder in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously modified as a matter of discretion in the interest of justice by reducing the sentence imposed to an indeterminate term of incarceration of 20 years to life and as modified the judgment is affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]). Defendant's conviction stems from his participation in a murder along with two other codefendants. At trial, a witness testified that defendant pointed a gun at the victim and shot him. In defendant's written statement to the police, he admitted that he agreed to kill the victim for one of the codefendants in exchange for a sum of money, that he retrieved his gun from his house and drove from Elmira to Rochester with the codefendants to execute the plan, that he waited with the codefendants for the victim to arrive at a house, and that when the victim arrived, he pointed the gun at him and threatened to "shoot him in the brain." Defendant further stated, however, that he "couldn't pull the trigger" even though a codefendant was telling him to "shoot him, shoot him." That codefendant then "snatched" the gun out of defendant's hand, said "Fxxx it I'll do it," and shot the victim multiple times. Defendant was previously convicted of criminal possession of a weapon in the second degree stemming from this incident, which conviction we affirmed (People v Brewer, 118 AD3d 1407 [4th Dept 2014], lv denied 24 NY3d 1082 [2014]). He was also convicted, after a separate trial, of murder in the second degree stemming from this incident, but we reversed that conviction and remitted for a new trial on that count of the indictment based on our determination that Supreme Court (Egan, J.) erred in charging the jury with the affirmative defense of renunciation over the objection of defense counsel (People v Brewer, 118 AD3d 1409 [4th Dept 2014], lv denied 24 NY3d 1082 [2014]).
In this appeal, we reject defendant's contention that the People were judicially estopped from proceeding on a theory of accomplice liability inasmuch as "the People neither argued for nor prevailed upon a contrary position in a prior proceeding" (People v Adam, 126 AD3d 1169, 1170 [3d Dept 2015], lv denied 25 NY3d 911 [2015]). Defendant relies upon statements made by the prosecutor when opposing defendant's request to dismiss the count of intentional murder in the indictment based upon an executed cooperation agreement, the court's denial of which we upheld on the prior appeal from the murder conviction (Brewer, 118 AD3d at 1409-1411). Specifically, the prosecutor had indicated that defendant's statement to the police, on its own, would not give the prosecutor a legal basis to charge him with intentional murder under any theory of liability, but that, after obtaining a statement from a witness who said that defendant shot the victim, the prosecutor voided the cooperation agreement on the ground that defendant had provided false information. Thus, the People did not argue or prevail upon a contrary [*2]position in the earlier proceeding because the issue whether defendant's statement, if accepted as true, would support a charge of murder on a theory of accomplice liability was irrelevant to the issue before the court and this Court, which was whether the prosecutor had a good faith belief that defendant failed to provide truthful information (id. at 1411).
We reject defendant's contention that the court (Affronti, J.) erred in instructing the jury on both principal and accomplice liability. It is well settled that "there is no legal distinction between liability as a principal or criminal culpability as an accomplice" (People v Rivera, 84 NY2d 766, 769 [1995]; see People v Mateo, 2 NY3d 383, 406 [2004], cert denied 542 US 946 [2004]; People v Atkinson, 185 AD3d 1438, 1439 [4th Dept 2020], lv denied 35 NY3d 1092 [2020]). Thus, the court properly instructed the jurors that, while their verdict needed to be unanimous, they did not need to be unanimous on whether defendant committed the crime personally or by acting in concert with another or others (see Mateo, 2 NY3d at 406; CJI2d[NY] Accessorial Liability n 7). Contrary to defendant's contention, the court's instruction was not contrary to Ramos v Louisiana (— US &mdash, &mdash, 140 S Ct 1390, 1395-1397 [2020]) inasmuch as, unlike Ramos, defendant here was convicted upon a unanimous verdict.
We reject defendant's contention that the evidence is legally insufficient to establish his liability as an accessory. "Accessorial liability requires only that defendant, acting with the mental culpability required for the commission of the crime, intentionally aid another in the conduct constituting the offense" (People v Pizarro, 151 AD3d 1678, 1681 [4th Dept 2017], lv denied 29 NY3d 1132 [2017] [internal quotation marks omitted]; see Penal Law § 20.00). Viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), the factfinder could have reasonably concluded that defendant and the codefendants "jointly planned, prepared for and committed the murder of the victim" (People v Glanda, 5 AD3d 945, 949 [3d Dept 2004], lv denied 3 NY3d 640 [2004], reconsideration denied 3 NY3d 674 [2004], cert denied 543 US 1093 [2005]; see People v Williams, 179 AD3d 1502, 1502-1503 [4th Dept 2020], lv denied 35 NY3d 995 [2020]; People v Morris, 229 AD2d 451, 451 [2d Dept 1996], lv denied 88 NY2d 990 [1996]; see generally People v Cabey, 85 NY2d 417, 421-422 [1995]). Viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant's further contention that the verdict is against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
We reject defendant's contention that the court erred in denying his request to admit in evidence the results of his polygraph examination (see People v Shedrick, 66 NY2d 1015, 1018 [1985], rearg denied 67 NY2d 758 [1986]; People v Weber, 40 AD3d 1267, 1267 [3d Dept 2007], lv denied 9 NY3d 927 [2007]; see also People v DeLorenzo, 45 AD3d 1402, 1402-1403 [4th Dept 2007], lv denied 10 NY3d 763 [2008]). We also reject defendant's further contention that his absence from a pretrial appearance denied him his right to be present at a material stage of the criminal proceeding. At the proceeding, the court, the prosecutor, and defense counsel discussed only questions of law regarding the admissibility of defendant's polygraph examination results and the judicial estoppel issue, and thus defendant's presence was not required (see People v Velasco, 77 NY2d 469, 472 [1991]; People v Butler, 96 AD3d 1367, 1368 [4th Dept 2012], lv denied 20 NY3d 931 [2012]; see generally People v Chisolm, 85 NY2d 945, 947 [1995]). The facts regarding those issues were uncontested and, contrary to defendant's contention, did not implicate his "peculiar factual knowledge" (People v Fabricio, 3 NY3d 402, 406 [2004]).
We agree with defendant, however, that the sentence imposed, an indeterminate term of incarceration of 25 years to life, is unduly harsh and severe. Under the circumstances of this case, including that defendant was 18 years old at the time of the incident, we modify the judgment as a matter of discretion in the interest of justice by reducing the sentence to an indeterminate term of incarceration of 20 years to life (see generally CPL 470.15 [6] [b]), with the sentence remaining concurrent to the sentence previously imposed on the count of criminal possession of a weapon in the second degree.
We have considered defendant's remaining contentions and conclude that they are without merit.
Entered: July 16, 2021
Mark W. Bennett
Clerk of the Court