People v Rivera (2023 NY Slip Op 00129)

People v Rivera

2023 NY Slip Op 00129

Decided on January 12, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 12, 2023

112055
[*1]The People of the State of New York, Respondent,
v
Eric S. Rivera, Appellant.

Calendar Date:November 22, 2022

Before:Lynch, J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

Danielle Neroni Reilly, Albany, for appellant.
Lorraine Diamond, District Attorney, Fonda (Manpreet Kaur of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the County Court of Montgomery County (Felix J. Catena, J.), rendered May 17, 2019, upon a verdict convicting defendant of the crimes of murder in the second degree and conspiracy in the second degree.
In June 2018, the victim was shot and killed on his front porch. During the ensuing investigation, defendant made several incriminating oral and written statements to law enforcement. Ultimately, defendant, Gary L. Sweet and Aaron Cockfield Jr. were charged, by a joint indictment, with murder in the second degree and conspiracy in the second degree. Following a jury trial, defendant was convicted as charged. Thereafter, defendant agreed to waive his right to appeal and to testify in a trial against Sweet, in consideration of a promised prison sentence. Defendant then provided detailed testimony under oath as to what occurred on the night of the victim's death, and was subsequently sentenced, in accordance with the sentencing agreement, to concurrent prison terms of 15 years to life on the murder conviction, and 8&frac13; to 25 years on the conspiracy conviction.[FN1] We previously reviewed Sweet's conviction, which was affirmed on appeal (People v Sweet, 200 AD3d 1315, 1318 [3d Dept 2021], lv denied 38 NY3d 930 [2022]). Defendant appeals.
Initially, we agree with defendant's contention that the waiver of appeal is invalid. Although "a defendant may waive his or her right to appeal from a jury verdict" (People v Leflore, 154 AD3d 1164, 1164 [3d Dept 2017], lv denied 30 NY3d 1106 [2018]), the "totality of the circumstances" surrounding such waiver must reveal that the defendant understood the nature of the appellate rights being waived and must not suggest a complete bar to taking an appeal (People v Shanks, 37 NY3d 244, 252-253 [2021] [internal quotation marks and citation omitted]; see People v Sims, 207 AD3d 882, 883 [3d Dept 2022]; People v Alexander, 207 AD3d 878, 879 [3d Dept 2022]). Here, the written waiver of appeal indicated that it encompasses "any other matters" for which defendant may have an appeal as of right in state or federal court, and that it further waives "all matters related to the conviction" which "will mark the end of [defendant's] case." County Court's oral colloquy did not attempt to clarify that the appeal waiver was not a total bar to taking an appeal and, therefore, given this mischaracterization of the appellate rights waived, we are unable to find that defendant understood the nature of the appellate rights being waived (see People v Alexander, 207 AD3d at 879; People v Anderson, 184 AD3d 1020, 1020 [3d Dept 2020], lv denied 35 NY3d 1064 [2020]). Accordingly, we find that defendant did not enter a knowing, intelligent and voluntary appeal waiver (see People v Lafond, 189 AD3d 1824, 1825 [3d Dept 2020], lv denied 36 NY3d 1121 [2021]; compare People v Sims, 207 AD3d at 883).
In light of the invalid appeal waiver, we consider defendant's challenge to his convictions. Defendant argues that his convictions [*2]are not supported by legally sufficient evidence and that the verdict is against the weight of the evidence. Specifically, defendant contends that the People did not prove that he had the intent to kill the victim and, as a result, there could not have been a conspiracy as he did not share the same mental culpability as Sweet. "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Santiago, 206 AD3d 1466, 1467 [3d Dept 2022] [internal quotation marks and citations omitted]). "In contrast, when undertaking a weight of the evidence review, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Colter, 206 AD3d 1371, 1373 [3d Dept 2022] [internal quotation marks, brackets and citations omitted], lv denied 38 NY3d 1149 [2022]). During our review, "we do not distinguish between direct or circumstantial evidence" (People v Terry, 196 AD3d 840, 841 [3d Dept 2021], lv denied 37 NY3d 1030 [2021]).
As charged here, " 'a person is guilty of murder in the second degree when, with intent to cause the death of another person, he or she causes the death of such person' " (People v Taylor, 196 AD3d 851, 852 [3d Dept 2021] [brackets and ellipsis omitted], lv denied 37 NY3d 1030 [2021], quoting Penal Law § 125.25 [1]). " 'A person is guilty of conspiracy in the second degree when, with intent that conduct constituting a class A felony be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct' " (People v Chapman, 182 AD3d 862, 863-864 [3d Dept 2020] [brackets omitted], quotingPenal Law § 105.15). Since "there is no legal distinction between criminal liability as a principal or as an accessory to a crime" (People v Bowes, 206 AD3d 1260, 1261 [3d Dept 2022] [internal quotation marks and citation omitted]), " 'when one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he or she solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct' " (People v Saunders, 181 AD3d 1049, 1050 [3d Dept 2020] [brackets omitted], quoting Penal Law § 20.00).
The evidence at trial revealed that defendant, Sweet, Cockfield and the victim all knew each other prior to the shooting. According to Cockfield, who testified at trial as a condition of his plea bargain, the victim had threatened [*3]to harm defendant, Sweet and their children because they had failed to pay a monetary debt that they owed to him. This escalated to the point where the victim was allegedly plotting to lure defendant and Sweet to a specific location to kill them. In the afternoon before the victim was killed, Cockfield testified that Sweet told defendant that they had to shoot the victim and get him before the victim got them. During this conversation, Sweet stated that he had access to guns and he made a plan to retrieve the guns for defendant and himself to use. Defendant borrowed a vehicle from a friend, and Cockfield drove defendant and Sweet to a barn. When they got there, defendant and Sweet exited the vehicle and went inside to collect the firearms for the shooting. Cockfield testified that, while he was waiting for them to return, he heard gunshots and saw "sparks in the air." When they returned to the vehicle, Cockfield asked them what the noise was and Sweet responded, "That was a 9[ ]millimeter."
Cockfield further testified that he drove defendant and Sweet to the victim's home, briefly stopping at another location along the way to allow defendant and Sweet to change into all black clothing. When they neared the victim's home, Cockfield parked down the street and stayed inside the vehicle while defendant and Sweet went to the victim's home. Cockfield testified that, after about 20 to 30 minutes, he heard multiple gunshots and, shortly thereafter, defendant and Sweet returned to the vehicle. Cockfield saw a gun tucked into defendant's waistband as he got into the vehicle but did not see a gun on Sweet, who "jumped in" and said, "Drive. Drive. Drive." Sweet then asked, "Did you see what I did?" and defendant responded, "Yes[,] I was right there." While still in the car, Sweet admitted during a cell phone call that "I shot him." Cockfield confirmed that, at no time did defendant express that he just wanted to talk to the victim, but that the plan had been to shoot and kill the victim.
The People presented the testimony of several members of law enforcement, who testified that the victim was found the following morning with one gunshot wound to the head. At some point on the day of the shooting, defendant voluntarily presented to a police station and was interviewed by a State Police investigator. According to the investigator, defendant provided an oral and written statement that mostly corroborated Cockfield's testimony. Defendant further explained to the investigator what happened when they arrived at the victim's home, including that he was speaking with the victim on the porch when Sweet went behind the victim and shot him in the head.
The People also presented several pieces of forensic evidence at trial. Specifically, a state trooper testified that she recovered a shell casing outside the victim's residence, which was ultimately determined to be a 9 millimeter casing that matched the casings found at the barn. According to the medical examiner[*4], these casings were consistent with the size of the victim's wound. An unfired 9 millimeter round was also found in the vehicle that defendant had borrowed the night of the shooting; the vehicle owner denied owning a 9 millimeter firearm or the corresponding ammunition. Although the firearm was not recovered, Sweet's girlfriend at the time testified, pursuant to a cooperation agreement, that she and the barn owner buried the 9 millimeter handgun. This was corroborated by the barn owner, who also testified, pursuant to a cooperation agreement, that he owned a 9 millimeter and a .22 caliber firearm that were taken by Sweet. The friend who let defendant borrow her vehicle testified that defendant came home the night of the shooting and showed her a .22 caliber handgun. A forensic scientist with the State Police testified that a .22 caliber handgun that was later recovered and matched the barn owner's missing firearm contained DNA evidence on the trigger that matched defendant.
Viewing the evidence in the light most favorable to the People, defendant's convictions of murder in the second degree, based upon accessorial liability, and conspiracy in the second degree are supported by legally sufficient evidence. The plan devised between defendant and Sweet had always been, according to Cockfield, to shoot and kill the victim, and the factfinder could have reasonably concluded that defendant "jointly planned, prepared for and committed the murder of the victim," therefore establishing legally sufficient evidence for both convictions (People v Glanda, 5 AD3d 945, 949 [3d Dept 2004], lv denied 3 NY3d 640 [2004], cert denied 543 US 1093 [2005]). Moreover, "[t]he intent to kill may be inferred from the surrounding circumstances and a defendant's actions" (People v Croley, 163 AD3d 1056, 1056 [3d Dept 2018] [internal quotation marks and citation omitted]; accord People v Terry, 196 AD3d at 842), and the People proffered evidence establishing that defendant retrieved a firearm, changed his clothing, secreted a loaded firearm on his person when he conversed with the victim and fled the scene after Sweet shot the victim. Viewing these facts in the light most favorable to the People, there is a valid line of reasoning and permissible inferences to conclude that defendant knew before the shooting occurred that Sweet planned to shoot and kill the victim (see People v Cabey, 85 NY2d 417, 421 [1995]; People v Bursey, 155 AD3d 1513, 1514 [4th Dept 2017], lv denied 30 NY3d 1114 [2018]; People v McNeil, 228 AD2d 620, 620-621 [2d Dept 1996], lv denied 89 NY2d 926 [1996]; compare People v Croley, 163 AD3d at 1060).
As to defendant's weight of the evidence argument, although a different verdict would not have been unreasonable considering that Cockfield, who testified to much of the relevant evidence, and various other witnesses had testified pursuant to plea agreements, "the testimony was not inherently unbelievable or incredible as a matter of law and was fully explored [*5]during cross-examination" (People v Sweet, 200 AD3d at 1318). Further, considering this testimony with defendant's written statement and the forensic evidence, and deferring to the jury's credibility determinations, the verdict is supported by the weight of the evidence as to the charge of murder in the second degree based upon accessorial liability (see People v Brewer, 196 AD3d 1172, 1174 [4th Dept 2021], lv denied 37 NY3d 1095 [2021], cert denied ___ US ___, 142 S Ct 1684 [2022]; People v Thompson, 75 AD3d 760, 763 [3d Dept 2010], lv denied 15 NY3d 896 [2010]; People v Washington, 38 AD3d 1339, 1340 [4th Dept 2007], lv denied 9 NY3d 870 [2007]), and, thereby, conspiracy in the second degree (see People v Drumgold, 206 AD3d 1044, 1047 [3d Dept 2022], lv denied 38 NY3d 1150 [2022]; People v Trappler, 173 AD3d 1334, 1337 [3d Dept 2019], lv denied 34 NY3d 985 [2019], cert denied ___ US ___, 140 S Ct 1281 [2020]).
Defendant's remaining contentions do not warrant extended discussion. We reject defendant's hearsay argument which, as he concedes, was not preserved for our review inasmuch as he failed to object to the challenged statements at trial (see People v Skeen, 139 AD3d 1179, 1182 [3d Dept 2016], lv denied 27 NY3d 1155 [2016]). Defendant's argument that evidence regarding his possession of the .22 caliber handgun should have been suppressed is also unpreserved (see People v Gethers, 151 AD3d 1398, 1402 [3d Dept 2017], lv denied 30 NY3d 980 [2017]), and, nevertheless, is further without merit (see People v Paul, 202 AD3d 1203, 1210 [3d Dept 2022], lv denied 38 NY3d 1034 [2022]).
Similarly, defendant's assertion that County Court erred by failing to give the charge regarding accomplices as a matter of law or the charge pertaining to corroboration of accomplice testimony is also unpreserved (see People v Kerrick, 206 AD3d 1268, 1270 [3d Dept 2022], lv denied 38 NY3d 1151 [2022]). We decline defendant's invitation to exercise our interest of justice jurisdiction to take corrective action, as, even if defendant had preserved this argument, "it is clear that any error in that regard is harmless inasmuch as there is abundant evidence to corroborate the witnesses' testimony" — including defendant's written statement to police and the forensic evidence presented at trial (People v Wesley, 19 AD3d 937, 938 [3d Dept 2005], lv denied 5 NY3d 857 [2005]; see CPL 60.22 [1]; see generally People v Williams, 139 AD3d 885, 887 [2d Dept 2016], lv denied 28 NY3d 1076 [2016]). We also decline to exercise our interest of justice jurisdiction as it relates to defendant's argument that County Court erred in providing, upon the jury's request, certain written jury instructions rather than the text of the applicable statutes. The record reflects that defendant, after a discussion on the record, consented to the jury instructions before they were provided to the jury, and, therefore, this claim is unpreserved for our review (see People v Muhammad, 171 AD3d 442, 449 [1st [*6]Dept 2019], affd 34 NY3d 1152 [2020]; see also CPL 310.30).
Finally, we reject defendant's contention that he was denied the effective assistance of counsel. "It is well established that a claim of ineffective assistance of counsel must fail if the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Sevilla-Rosales, 206 AD3d 1247, 1248 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1153 [2022]). Defendant argues that counsel did not provide meaningful representation at the Huntley hearing, the Sandoval conference and in relation to an alleged Molineux violation.[FN2] However, defendant "has not demonstrated on this record the absence of strategic reasons for defense counsel's conduct or that, had counsel taken the actions that defendant now points to, there was any likelihood of success" (People v Rivera, 206 AD3d 1356, 1360 [3d Dept 2022] [internal quotation marks, ellipsis and citation omitted]).
We are also unpersuaded by defendant's assertion that counsel failed to provide meaningful representation at trial. Our review of the record demonstrates that trial counsel filed appropriate pretrial motions, made cogent opening and closing statements, effectively cross-examined witnesses and pursued a reasonable trial strategy — particularly in light of defendant's pretrial admissions to law enforcement (see People v Sanchez, 196 AD3d 1010, 1014 [3d Dept 2021], lv denied 37 NY3d 1029 [2021]; see also People v Machia, 206 AD3d 1272, 1277 [3d Dept 2022], lv denied 38 NY3d 1151 [2022]). Based on the foregoing, we find that defendant received meaningful representation (see People v Santana, 179 AD3d 1299, 1302 [3d Dept 2020], lv denied 35 NY3d 973 [2020]; see also People v Sanchez, 196 AD3d at 1014).We have examined defendant's remaining contentions and have found them to be without merit or rendered academic.
Lynch, J.P., Clark, Pritzker and Ceresia, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Pursuant to Penal Law § 70.25 (1) (a), the sentences run concurrently because County Court did not specify otherwise. This is consistent with the intentions of the parties expressed during the oral colloquy when defendant waived his right to appeal.

Footnote 2: Inasmuch as the record does not indicate the extent of counsel's communications with defendant prior to the Sandoval conference, defendant's challenge relating to same would more properly be brought as part of a CPL article 440 motion (see People v Miles, 205 AD3d 1222, 1223 [3d Dept 2022], lv denied 38 NY3d 1189 [2022]).